IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

Carolyn Solesbee,                    )
                                     )        Civil Action No. 2:10-1882-RMG
         Plaintiff,                  )
                                     )
     vs.                             )
                                     )                **ORDER**
Michael J. Astrue, Commissioner      )
of the Social Security               )
Administration,                      )
                                     )
         Defendant.                  )
                                     )
_____)

Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the

final decision of the Commissioner of the Social Security Administration regarding her claim for

disability insurance benefits. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02,

D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. The

Magistrate Judge recommended the decision of the Commissioner be affirmed. For reasons set

forth below, the Court reverses that portion of the Commissioner's decision denying Plaintiff

disability insurance benefits from July 16, 2004 through March 17, 2007 and remands this matter

to the Commissioner for further action consistent with this decision.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation

has no presumptive weight, and the responsibility to make a final determination remains with the

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo*

determination of those portions of the Report to which specific objection is made, and may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or

recommit the matter to her with instructions.  28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social

Security Act is a limited one.  Section 205(g) of the Act provides that "[t]he findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be

conclusive . . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times

as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543

(4th Cir. 1964).  This standard precludes *de novo* review of factual circumstances that substitutes

the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir.

1971).

Although the federal court's review role is limited, "it does not follow, however, that the

findings of the administrative agency are to be mechanically accepted.  The statutorily granted

right of review contemplates more than an uncritical rubber stamping of the administrative

action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969).  Further, the Commissioner's

findings of fact are not binding if they were based upon the application of an improper legal

standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Rules and regulations of the Social Security Administration mandate that the

Commissioner make a systematic and careful review of the medical record and other evidence

presented by the claimant, which includes a review and weighing of all relevant medical opinions

and diagnoses.  The Commissioner must evaluate each disability claim utilizing a five step

process, which begins at Step One with a determination whether the claimant is still employed.

20 C.F.R. § 404.1520(a). If the claimant is not gainfully employed, the Commissioner must

consider at Step Two the severity of all of the claimant's impairments. An impairment is deemed

"severe" if it "significantly limits" the claimant's "physical or mental ability to do basic work

activities." § 1520(a)(ii), (c). The Commissioner must then consider at Step Three whether any

of the severe impairments of the claimant meet or equal the listings in Appendix 1, which would

automatically establish the claimant's disability. § 1520(a)(iii). If the claimant does not meet the

requirements of the Appendix 1 listings, the Commissioner must at Step Four assess the

claimant's residual functional capacity ("RFC") "based on all the relevant medical and other

evidence." § 1520(a)(iv), (e). Assuming that the claimant is not able to perform his or her past

relevant work, the Commissioner must assess at Step Five the claimant's RFC and age, education

and work experience to determine whether there is other available work the claimant can

perform. § 1520(a)(v), (g).

A claim of disability can be based on physical or mental impairments or a combination of

both. The Commissioner is obligated to consider all "medically determinable impairments" and

consider all medical evidence, opinions of medical sources and other evidence. 20 C.F.R. §

404.1545. "Medical opinions" include "statements from physicians and psychologists and other

acceptable medical sources that reflect judgments about the nature and severity of [the

claimant's] impairments, including . . . symptoms, diagnosis and prognosis . . . ." 20 C.F.R. §

404.1527(a)(2). Special consideration under some circumstances is given to a claimant's treating

physician, and other factors considered by the Commissioner regarding the medical opinions of

health providers include whether the provider examined the patient, the treatment relationship

with the provider and whether the provider is a specialist in the field in which the opinion is

-3-

given. § 1527(d)(1)-(6). The Commissioner is obligated to "always consider the medical opinions" available in the record. § 1527(b). *See also,* SSR 96-8P, 1996 WL 374184 at *6.

In addition to analyzing all relevant evidence in the record, including all medical opinions, the Commissioner has the duty to set forth and analyze in his decision all relevant evidence and to explain the weight given to all probative evidence. As the Fourth Circuit stated in *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." For instance, in making the RFC assessment, the Commissioner's decision "must include a narrative discussion describing how the evidence supports each conclusion" and must explain any conflict between the RFC assessment and any opinion from a medical source. SSR 96-8P at 7. Further, in assessing the credibility of the claimant regarding his or her subjective complaints, the Commissioner's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record . . . and must be sufficiently specific to make clear . . . the weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186 at *1-2. Moreover, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement" that the claimant is not credible. *Id.*

### Factual Background

Plaintiff submitted an application for a period of disability and disability insurance benefits on September 27, 2004, asserting she was disabled beginning on July 16, 2004. Plaintiff has not engaged in substantial gainful employment since the date of asserted disability. (Tr. at 16). Plaintiff asserted multiple impairments as the basis of her disability, which included

-4-

degenerative disc disease requiring decompression, fusion and placement of instrumentation, bilateral chronic knee pain with radiographic evidence of meniscus tears and psychological disorders including Dysthymic Disorder and Panic Disorder With Agoraphobia. (Tr. at 18, 240-242, 434-437).

In the course of making his Step Two analysis, the ALJ found that Plaintiff's degenerative disc disease and joint disease of the knees were "severe" under the standards set forth in 20 C.F.R. § 404.1520(c) and further found Plaintiff's "depression" to be severe. The ALJ did not address in Step Two Plaintiff's claim of Panic Disorder With Agoraphobia, either to find the condition was severe or non-severe. Further, while finding Plaintiff's "depression" to be severe, the ALJ failed to address in Step Two the more involved features and mental disorders which make up the diagnosis of Dysthymic Disorder. *Diagnostic and Statistical Manual of Mental Disorders* ("DSM IV") 300.4 at 345-350 (1994).

The ALJ, as part of his Step Four analysis of RFC, made a passing reference to the Plaintiff's diagnoses of "dysthymic disorder and panic disorder" by Dr. James Ruffing, a consulting and examining psychologist. (Tr. at 19). No reference was made by the ALJ to the diagnosis of "Panic Disorder With Agoraphobia" made by Dr. Ruffing.[1] Instead, the ALJ found that Plaintiff was "fully oriented", had a "functioning" memory and was capable of performing "simple repetitive tasks" even though the patient "appeared impaired due to her emotional state." (Tr. at 19). The ALJ omitted to include Dr. Ruffing's finding that the Plaintiff "appears to have

---

[1] Under DSM IV, there are separate diagnoses of "Panic Disorder Without Agoraphobia" (300.01) and "Panic Disorder With Agoraphobia" (300.21). The presence of Panic Disorder With Agoraphobia obviously contains potentially complicating features that can impact a patient's ability to engage in gainful employment that might not be present with the presentation of a panic disorder alone. *See*, DSM IV at 396-403.

emotional instability" and failed to address at any step in the disability assessment process any aspect of social functioning difficulties commonly associated with agoraphobia.

Similarly, the ALJ failed to address at any step in the disability assessment process the various diagnostic criteria and Plaintiff's symptoms associated with Dysthymic Disorder, which include the combination of depression with such additional conditions as insomnia, poor appetite, low energy and feelings of hopelessness. DSM IV at 349. One of the diagnostic criteria for Dysthymic Disorder is that the "symptoms cause clinically significant distress or impairment in social, occupational, or other important areas of functioning." *Id.* Further, the ALJ failed to mention Plaintiff's October 2006 admission to Spartanburg Regional Medical Center for chronic and worsening depression, which included documentation of insomnia, suicidal ideation, poor appetite and lack of responsiveness to multiple anti-depression medications. (Tr. 350-351). The ALJ, in a classic case of factual "cherry picking", referred to treatment of Plaintiff for depression during the period October 2006-October 2007 at St. Luke's Free Medical Clinic as indicating that the patient "was doing 'OK' on medication." (Tr. 19). In fact, the records are replete with such statements as "profound depression", "severe depression", "wants to sleep all the time" and "refer to Mental Health Center as soon as possible." (Tr. at 391, 399- 403) (emphasis in the original).

Plaintiff testified at the administrative hearing before the ALJ that she was "miserable" and that there are days she does not get out of bed, answer the phone or the door. (Tr. 473, 483). She explained, "I don't want to be around nobody" and seldom has company. (Tr. 483, 486). Further, she describes herself as crying frequently "for no reason at all." (Tr. 473). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to

-6-

produce the symptoms she described and found her statements concerning the intensity, persistence and limiting effects of the symptoms "not credible prior to March 18, 2007 . . . ." (Tr. at 18). The ALJ further noted that "[t]here is no indication in the medical evidence of record that the claimant reported the frequency, severity and limitations [to which] she testified to any treating or examining physician." (Tr. at 19).

In fact, the Plaintiff's medical record is replete with statements to providers similar to her hearing testimony. These include statements to Dr. Ruffing in May 2005 that supported his diagnoses of Panic Disorder With Agoraphobia and Dsythymic Disorder, including references to "crying spells, feeling worthless, hopeless and helpless" (Tr. at 241); statements to her treating physician, Dr. Padgett, in February 2005 that she was "nervous and anxious and crying frequently" (Tr. at 255); statements to Dr. Robert Jackson in October 2006 that she had increasing depression for the prior four months, insomnia, suicidal ideation and poor appetite; and statements to providers at the St. Luke's Free Medical Clinic in January 2007 that she was "crying and wants to sleep all the time" and has "[no] energy". (Tr. at 399).

The ALJ concluded that Plaintiff had the RFC to do sedentary work so long as she was limited to "simple, unskilled, repetitive type work . . . ." (Tr. at 17). The ALJ further found that Plaintiff could not perform her former work as a receptionist and textile machine operator and she was automatically disabled upon her 50th birthday on March 18, 2007 on the basis of the provisions of 20 C.F.R. § 404.1560(c) and 404.1566. However, the ALJ concluded for the time period extending from the Plaintiff discontinuing work on July 16, 2004 until March 17, 2007, she was not disabled. The ALJ decision ultimately became the final decision of the Commissioner, and Plaintiff timely sought judicial review of the denial of disability benefits to

this Court.

## Analysis

The Commissioner's decision fails to address relevant medical opinions and medical evidence in the record, make essential findings as to the weight accorded probative evidence in conflict with his conclusions and disclose any substantive basis for his finding that the Plaintiff's subjective complaints were not credible. First, the ALJ does not address at Step Two Dr. Ruffing's diagnosis of Panic Disorder With Agoraphobia. Thus, there is no determination whether this condition is severe or non-severe. The ALJ does make a passing mention at Step Four of Dr. Ruffing's diagnosis of panic disorder, but fails here or anywhere else in the decision to refer to the diagnosis of agoraphobia and its potential impact on Plaintiff's ability to perform work. The ALJ's failure to address in the decision the medical diagnosis of Panic Disorder With Agoraphobia, weigh the opinions on the subject offered by Dr. Ruffing, an examining consultant psychologist, and assess this impairment's impact on the Plaintiff's RFC all constitute error mandating reversal and remand. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 1527(b), 1545. Had the ALJ assessed and determined Plaintiff's Panic Disorder With Agoraphobia was a severe impairment, it would have then been necessary to assess the impact of that finding at each subsequent step of the disability evaluation process. This process of assessing and weighing the evidence in the record is the responsibility of the Commissioner and not this Court.

Second, the ALJ at Step Two found Plaintiff's "depression" to be a severe condition, but did not address at this step Dr. Ruffing's diagnosis of Dysthymic Disorder. According to the criteria set forth in the DSM IV, Dysthymic Disorder is a mood disorder that includes "depressed mood" plus two or more additional features or mental disorders. DSM IV 300.4 at 346-349. The

ALJ erred in failing to analyze and weigh Dr. Ruffing's diagnosis of Dysthymic Disorder at Step Two and determine whether it was a severe or non-severe impairment. Again, if Plaintiff's Dysthymic Disorder had been determined to be a severe impairment, further assessment of this condition would have been necessary at subsequent steps in the disability evaluation. The failure of the ALJ to address and weigh Dr. Ruffing's medical opinion of Dysthymic Disorder at Step Two requires reversal and remand. §§1520(a)(4)(ii) and (c), 1527(b), 1545.

Third, the ALJ failed to address the Plaintiff's October 2006 hospital admission for chronic depression, which included findings of insomnia, poor appetite, worsening depression symptoms and suicidal ideation. (Tr. 350-360). These findings were consistent with Dr. Ruffing's overlooked diagnoses and relevant to the ALJ's analysis at Steps Two, Three, Four and Five. Further, the ALJ's review of the St. Luke's Free Medical Clinic records during 2006 and 2007 omitted some of the most relevant findings and opinions, including descriptions of Plaintiff's depression as "severe" and "profound", reports of excessive sleep, absence of energy and crying, and instructions to refer Plaintiff to the Mental Health Center "as soon as possible." (Tr. 391, 399-403). The ALJ's failure to assess, analyze and weigh this evidence requires reversal and remand. §§ 1527, 1545.

Fourth, the ALJ found that Plaintiff's subjective complaints regarding her impairments were not credible "prior to March 18, 2007 to the extent inconsistent with the residual functional capacity assessment . . . ." (Tr. 18). The ALJ further noted there was "no indication in the medical evidence of record that the claimant reported the frequency, severity and limitations [to which] she testified to any treating or examining physician." (Tr. 19). The ALJ's conclusory statements regarding Plaintiff's credibility are insufficient to satisfy the requirement of "specific

reasons for the finding of credibility, supported by the evidence in the case record" with sufficient specificity to allow for subsequent judicial review. SSR 96-7P. Further, the ALJ's finding that there is "no indication in the medical evidence of record" that the Plaintiff reported the severity of her mental health impairments to treating or examining providers is not supported by substantial evidence in the record. To the contrary, the record documents multiple entries in the medical record indicating that Plaintiff reported significant symptoms of her mood and panic disorders to Dr. Ruffing in May 2005, her treating family physician, Dr. Padgett, in February 2006, to Dr. Robert Jackson at Spartanburg Regional Medical Center in October 2006, and to providers at the St. Lukes Free Medical Clinic in 2006 and 2007. (Tr. 240-242, 255, 350-351, 399-403).

### Conclusion

Based on the foregoing, the Court hereby **reverses** that portion of the Commissioner's decision denying disability insurance benefits to Plaintiff for the period from July 16, 2004 to March 17, 2007, pursuant to sentence four of 42 U.S.C. § 405(g), and **remands** the matter to the Commissioner for further action consistent with this Order.

AND IT IS SO ORDERED.


_____
Richard Mark Gergel
United States District Court Judge


October 25, 2011
Charleston, South Carolina

-10-